[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15921
Non-Argument Calendar

_____

D. C. Docket No. 99-00250-CR-J-16-MMH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN HARDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 19, 2006)**

Before TJOFLAT, BIRCH  and MARCUS, Circuit Judges.

PER CURIAM:

John Hardy appeals his sentence for violation of supervised release, pursuant

to 18 U.S.C. § 3583(e)(3). Because the district court's imposition of a 24-month term of imprisonment sentence for revocation of supervised release was not unreasonable, we AFFIRM.

## I. BACKGROUND

In 1999, Hardy and another individual were indicted for conspiring to manufacture marijuana, in violation of 21 U.S.C. § 841(a)(1). While on bond, Hardy was arrested for disorderly intoxication and violated the conditions of his release. The district court permitted Hardy to remain released on bond, but modified his conditions of release to include a restriction to the use of alcohol. R1-48. In a written plea agreement, Hardy agreed that he faced statutory terms of imprisonment ranging from 60 months to 40 years, and of supervised release ranging from 48 to 60 months. R1-43 at 1. The probation officer calculated Hardy's criminal history category as III, and reported that, although Hardy had admitted using marijuana daily for over 10 years and had initially tested positive for marijuana, his subsequent drug screens were negative.

In April 2000, the district court sentenced Hardy to 41 months of imprisonment and 60 months of supervised release. The district court found Hardy eligible for a sentence below the statutory mandatory minimum in light of a substantial assistance motion filed by the government under U.S.S.G. § 5K1.1, 18

2

U.S.C. § 3553(e). R1-61, 62. In relevant part, the terms of Hardy's supervised release required that he: (1) not unlawfully use controlled substances; (2) submit to periodic drug testing; (3) not engage in the excessive use of alcohol; and (4) participate in a program for the treatment of narcotic addiction or drug and alcohol dependency. R1-64 at 3-4. Hardy's term of supervised release ultimately began on 24 May 2002. See R1-72 at 1.

On 25 January 2005, the probation office petitioned to the district court for modification of the terms of Hardy's supervised release. Id. The probation officer explained that Hardy was charged with domestic battery, tampering with a witness, and criminal mischief on 18 January 2005. Id. at 2. The petition stated that Hardy admitted "drinking alcohol on that day," going to his girlfriend's house upset, "smashing her cell phone, and pulling the phone line out of the wall." Id. Hardy was enrolled in a substance abuse treatment program and agreed to the modification of his supervised release conditions: (1) requiring him to reside in a community correctional center for 60 days; (2) requiring him to participate in a domestic violence intervention program; and (3) prohibiting him from contacting his girlfriend or her family without his probation officer's permission. Id. at 1, 4.

On 4 March 2005, the probation officer submitted another request for modification of the terms of Hardy's supervised release. R1-73. This request stated that on 6 February 2005, Hardy was arrested for disorderly conduct after

allegedly attempting to board a yacht docked in downtown Jacksonville and punching the yacht owner. Id. at 1-2. It reported that Hardy denied these allegations and the officer's observation that he had been drinking alcohol. Id. at 2. The document also stated that Hardy's drug test on 25 January 2005 tested positive for cocaine, and that he ultimately admitted to having used cocaine. Id. As a result of these incidents and upon Hardy's agreement, the district court again modified his supervised release conditions, requiring him to reside in the community correctional center for an additional 120 days. Id. at 1, 3-4. The district court warned that it would "not tolerate further [such] behavior." Id. at 3.

In July 2005, the probation officer petitioned the district court again. This time, the probation officer reported that Hardy had been "unsuccessfully discharged" from the community correctional facility for using alcohol on 4 July 2005. R1-74 at 1. The probation officer recommended that the district court revoke Hardy's supervised release. Id. at 2.

A preliminary revocation hearing was held on 25 August 2005, and Hardy was released pending a final revocation hearing. R1-77. As conditions of his release, Hardy was, inter alia, (1) prohibited from committing any federal, state, or local offense, and (2) required to continue his supervised release conditions, as modified. R1-81 at 1-2. Hardy tested positive for cocaine on 6 September 2005, and later admitted using cocaine as recently as "one week prior to [a 23 September

4

2005] interview." R1-84. On 4 October 2005, the magistrate judge revoked Hardy's bond and ordered him detained pending the final revocation hearing. R1-87, 89.

The final revocation hearing was held on 11 October 2005. R1-90; R2. Upon revocation of his supervised release, Hardy faced a statutory term of imprisonment of 24 to 36 months, but an advisory Guideline range of only 5 to 11 months.[1] R2 at 7; 18 U.S.C. § 3583(e); U.S.S.G § 7B1.4(a). Hardy admitted to using alcohol in violation of the community corrections center's rules and that he was subsequently discharged for that conduct. R2 at 4. The district court revoked Hardy's term of supervised release and allowed testimony from Michael Hardy ("Michael"), Hardy's father. Id. at 4-5. Michael said that, "until last January," Hardy had done well during the first three years of his supervised release, had worked 40 to 50 hours per week, and had lived at Michael's house "the whole time" without causing problems. Id. at 5. Hardy's attorney argued that Hardy displayed "a pattern of substance abuse," but that the January 2005 charges for disorderly intoxication and the domestic dispute had been dismissed. Id. at 6-7. He stated that Hardy worked hard, had held the same job for three years, did not drink during the week, and had been truthful with the probation office regarding all

[1] The district court advised Hardy that "upon the revocation of [Hardy's] supervised release," the court would be in a position to . . . put [Hardy] back on supervised release or sentence [Hardy] to a substantial period of . . . incarceration." R2 at 3.

5

of his violations. Id. at 7-8. He acknowledged that Hardy had "pretty much reached the end of any kind of sanctions with regard to the probation office . . . [such that] any kind of continued supervision [would not be] appropriate or necessary." Id. at 8. He recommended a term of imprisonment at "the upper end of the advisory [Guidelines] range;" the government requested that Hardy be sentenced to serve 24 months in prison. Id. at 8-10.

On his own behalf, Hardy apologized for his actions and stated that he was a hard worker but was addicted to cocaine. Id. at 11. The district court commented that the taxpayers, the court, and the probation office had "done about as much as possible to help you. . . . You've had all kinds of chances since you were placed on supervised release," but remained a drug addict, and that "the only thing that's going to save you is to get away from it and stay away from it." Id. at 12. The district court then sentenced Hardy to serve a term of 24 months in prison. Id. at 15; R1-91. After being granted permission to "say one more thing," Hardy stated that he had attended the drug program and anger management classes required by the court, but that he was "having a hard time" accepting punishment for the incidents involving his girlfriend and the yacht owner because he had not been charged or convicted of them. Id. at 13-14. When he admitted using cocaine while on bond, and being discharged from the community correctional center for using alcohol, the district court explained that advised that these incidents were the basis for the revocation of release. Id. at 14. The district court also stated that it had

6

considered all of the factors set forth at 18 U.S.C. § 3553(a) and that the imposed sentence was in its "best judgment" "the best sentence, in keeping with the law, and . . . the advisory guidelines." Id. at 15-16. The district court did not specifically inquire as to whether Hardy had any final objections, and none were lodged. See id. at 12-16. Hardy filed a timely appealed.

## II. DISCUSSION

A. Reversible Error under United States v. Jones

Hardy, noting that errors not objected to below are normally reviewed for plain error, contends that he did not object to the sentence as unreasonable under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), because the district court failed to comply with the procedure set forth in United States v. Jones, 899 F.2d 1097 (11th Cir. 1990), overruled in part on other grounds by United States v. Morrill, 984 F.2d 1136, 1137 (11th Cir. 1993) (en banc). He requests that we vacate and remand because the district court failed to inquire after sentencing whether he had any further objections.

In Jones, we exercised our supervisory powers over district courts and "instruct[ed] the district courts to elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law." Jones, 899 F.2d at 1102. The objective of this rule is to ensure that all objections are raised below and that the grounds for each objection are clearly

7

stated.  Id.  When a district court fails to comply with Jones, we normally vacate the sentence and remand the case to the district court to give the appellant an opportunity to present his objections.  Id. at 1103.  A remand, however, is unnecessary when the record on appeal is sufficient for review.  See United States v. Cruz, 946 F.2d 122, 124 n.1 (11th Cir. 1991).

We have never explicitly extended the Jones rule to proceedings regarding a sentence imposed on the revocation of supervised release.[2]  We need not, however, reach that issue in this case.  Even assuming a Jones violation, the record in this case is sufficient for review and a remand is therefore unnecessary.

B.  Unreasonable Sentence under United States v. Booker

Hardy argues that the revocation sentence imposed by the district court was unreasonable in light of Booker and 18 U.S.C. § 3553(a).  He notes that his sentence exceeds the Sentencing Guidelines Chapter Seven range, and argues that the district court's only basis for the sentence was that he was a drug addict who needed to stay away from cocaine.  Hardy contends that the sentence was greater than necessary since his prior incarceration did not solve his drug problem.  He notes that he was gainfully employed during most of his supervision and maintained a stable residence with his parents.

A sentence imposed upon revocation of a supervised release term is to be

---

[2]To the extent Hardy raises a claim under Jones only to obtain plenary review of his Booker reasonableness claim, we have not indicated that preservation below is necessary.

8

reviewed for reasonableness, applying the 18 U.S.C. § 3553(a) factors in light of Booker. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006) (per curiam). A district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e). The factors to be considered include, inter alia, (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need for the sentence . . . to reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment," and "provide the defendant with needed . . . medical care, or other correctional treatment;" and (4) "the kinds of sentences and the sentencing range established" by the Guidelines, and in the case of a violation of supervised release, the applicable Guidelines or policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a).

Chapter Seven of the Sentencing Guidelines provides policy statements for courts to consider in determining a sentence for revocation of supervised release. U.S.S.G. Ch. 7, Pt.A(1). These statements are advisory and nonbinding. United States v. Hofierka, 83 F.3d 357, 360 (11th Cir. 1996) (per curiam). The recommended range under Chapter Seven is based on the classification of the conduct that resulted in the revocation of supervised release and the criminal

9

history category applicable at the time the defendant was sentenced to a term of supervision. U.S.S.G. §§ 7B1.1, 7B1.4. Chapter Seven provides for a 5 to 11-month term of imprisonment when a defendant's supervised release is revoked for committing a Grade C violation and the defendant has a criminal history category of III. §§ 7B1.1(a)(3), 7B1.4(a). "Where the original sentence was the result of a downward departure . . . an upward departure may be warranted." § 7B1.4, comment. (n.4).

The district court in this case did not act unreasonably in sentencing Hardy to 24 months of imprisonment for four reasons. First, Hardy admitted that he violated the conditions of his supervised release, and, therefore, the district court acted within its discretion when it revoked his release. See 18 U.S.C. § 3583(e). Second, while Hardy's revocation sentence exceeded the advisory Guideline range of 5 to 11 months' imprisonment, it was below the statutory maximum of 36 months of imprisonment, and his original sentence was the result of a downward departure, such that it was 19 months below the otherwise statutory mandatory minimum sentence. See U.S.S.G §§ 7B1.4(a) and 7B1.4, comment. (n.4); 18 U.S.C. § 3583(e); 21 U.S.C. § 846. Third, the district court acknowledged the advisory Guideline range and considered the § 3553(a) factors before determining that a sentence of 24 months of imprisonment was most appropriate in this case. Specifically, it noted that Hardy continued to use drugs despite having been given

10

numerous chances while on supervised release, and that the 24-month sentence was its "best judgment" of the appropriate sentence in light of the advisory nature of the Guidelines and all of the § 3553(a) factors, including the need for punishment, his history and circumstances, and the need for medical care or correctional treatment. Fourth, Hardy's 24-month sentence was less than the applicable statutory maximum, and was reasonable in light of the evidence of his conduct while on supervised release.[3] See Sweeting, 437 F.3d at 1107.

## III. CONCLUSION

Even assuming that the district court violated Jones, the record was sufficient for appellate review and does not require that we vacate his sentence and remand for resentencing. The district court's imposition of a 24 month sentence of imprisonment for revocation of Hardy's term of supervised release was not unreasonable, in light of Booker, for the reasons stated above.

**AFFIRMED.**

---

[3]Hardy also cites United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005), and argues that it was unreasonable for him to receive the same sentence as Winingear. We find no authority to support the proposition that the fact that Hardy's revocation sentence is equal to the original sentence received by the defendant in Winingear, renders unreasonable his otherwise reasonable sentence.